IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 2:24-cr-00022 |
| | ) | |
| LESTER BURRELL JACKSON III | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER RESOLVING DEFENDANT'S PENDING MOTIONS, SCHEDULING AN EVIDENTIARY HEARING, AND SETTING DEADLINES**

Defendant Lester Burrell Jackson III ("Defendant") was charged in a six-count Superseding Indictment on March 13, 2024. (ECF No. 43), followed up with a Second Superseding Indictment (ECF No. 138), that again contained six counts, but which includes additional allegations. He has filed numerous pretrial motions related to the proceedings in his case. (ECF Nos. 115, 116, 117, 118, 119, 121, 122, 123, 124, 125, 133, 152, 153). While several of these Motions predate the Second Superseding Indictment ("SSI"), the Defendant has reasserted them in full against the SSI. (ECF No. 154). These Motions have been briefed and are now ripe for resolution and/or the setting of further proceedings. This Memorandum Order will resolve some of these Motions, hold disposition of some others in abeyance pending further proceedings, and schedule additional hearings as is necessary.

**BACKGROUND**

Defendant is accused of selling illegal narcotics to an undercover city of Pittsburgh police office on three separate occasions during a "sting" operation. During a final scheduled sale, Defendant was arrested, and a search of his satchel bag found a pistol, which was illegal for him to possess in light of his multiple prior felony convictions. In the SSI, Defendant was charged with

three counts of distributing methamphetamine and fentanyl, two counts of illegally possessing a firearm, and one count of possessing fentanyl with the intent to distribute.

The sting operation began in 2023. In October of that year an undercover police officer ("UO") began contacting Defendant through text messages, phone conversations, and FaceTime video calls. Defendant at this time was using a phone associated with the number (412) 636-7017. He would later continue these communications using a different phone number: (412) 545-4031. The officer recognized Defendant on FaceTime by comparing the video feed to his arrest photograph on Allegheny County's Quick Arrest website.

The communications between Defendant and the UO related to the sale of illegal narcotics. Defendant allegedly agreed to meet UO at the Robinson Mall in the suburbs of western Pittsburgh to sell narcotics to the UO. On November 14, 2023, the UO arrived at the Robinson Town Center Mall ("Mall") and allegedly purchased a brick of heroin/fentanyl and a small amount of methamphetamine from the Defendant for two hundred dollars. The UO would allegedly purchase increasing amounts of narcotics from Defendant at the Mall again in December of 2023 and in January of 2024.

These facts alleged were submitted in an affidavit sworn out by Johnny Erevia, a Special Agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives in a criminal complaint. (ECF No. 2). On January 26, 2024, a United States Magistrate Judge issued an arrest warrant for Defendant based on that affidavit. (ECF No 8). The Magistrate Judge also approved a search warrant (No. 24-120) to search Defendant's person when he was arrested for any instrumentalities or evidence of the crimes he was accused of, and specifically for any electronics in his immediate control. (ECF No. 125-2) ("First" Search Warrant).

On January 27, 2024, Defendant drove to meet the UO, allegedly under the pretense of the UO purchasing more fentanyl. When he arrived at the agreed upon location, law enforcement officers moved in to arrest Defendant. Defendant attempted to flee and discarded fentanyl he had in his possession. Law enforcement subdued Defendant, securing the cell phone he had in his hand, and found a Smith & Wesson .40 caliber pistol in his satchel.

A second search warrant (No. 24-131) ("Second" Search Warrant) was sought and then approved after Defendant's arrest. (ECF No. 125-4). This Second warrant approved a search of the car Defendant drove to meet with the UO the day of his arrest. Agent Erevia once again swore out the supporting affidavit, stating that a search of Defendant's vehicle was necessary and permitted because in his experience "it is common for drug dealers to conceal contraband, firearms, and proceeds of drug sales in secure locations within their residences, vehicles, and/or businesses for ready access." (ECF No. 125-4 at 4). This Second search warrant approved a search for instrumentalities of crime, including controlled substances, cellular telephones, photographs, videos, other records, and United States currency within Defendant's car. The Second warrant also stated that any found digital device could be operated and searched to discover certain pieces of information.

When Defendant's car was searched pursuant to the Second warrant, another cell phone was found. The phone in Defendant's hand when he was originally arrested was associated with the phone number (412) 545-4031. The phone found in the car was associated with the phone number (412) 636-7017.

## DISCUSSION

The Defendant has filed a variety of Motions. The Court will address them in turn, with some Motions being addressed simultaneously due to the Court deciding them along similar grounds.

### I. Defendant's Motion To Dismiss The Second Superseding Indictment On Speedy Trial Grounds (ECF No. 152) Is DENIED.

Defendant has filed a Motion to Dismiss the Second Superseding Indictment, (ECF No. 152), arguing that prosecution of the Defendant on all but one charge in both the Superseding Indictment and SSI violate the Speedy Trial Act and the Due Process Clause of the Fifth Amendment. The criminal complaint filed on January 26, 2024, charged Defendant with distribution of more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). (ECF No. 17). Defendant was subsequently arrested the next day, January 27, 2024, pursuant to a federal warrant. On February 6, 2024, eight days after Defendant's arrest, Defendant was indicted by a grand jury on four counts, in which Count 3 was for the distribution of 50 grams or more of methamphetamine named in the criminal complaint, which the indictment alleged to have occurred on or about January 2, 2024. Counts 1 and 2 were for distribution of methamphetamine on two different dates and Count 4 was for possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §922(g). (ECF No. 26).

On March 13, 2024, a grand jury returned the six-count Superseding Indictment which added Count 5, possession with intent to distribute a quantity of fentanyl and Count 6, carrying a firearm during and in relation to a drug trafficking crime, both on or about January 27, 2024. (ECF No. 43). Finally, on September 16, 2025, a grand jury returned the six-count SSI, which added fentanyl as a substance Defendant is charged with distributing under Counts 1, 2, and 3. (ECF No. 138). The SSI also includes a "Special Finding" section that alleges Defendant was previously convicted of

a serious violent felony and served a term of imprisonment of more than twelve months, which the Government states, along with the Notice filed at ECF No. 141, put Defendant on notice that enhanced penalties in 21 U.S.C. § 841 apply.

The Speedy Trial Act requires that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Defendant argues that, because the Superseding Indictment was filed forty-six days after his arrest and the SSI was filed nearly 600 days after his arrest, both indictments violate the thirty-day time limit imposed by § 3161(b). In support of this argument, Defendant cites two cases from the Second Circuit, *United States v. Gonzalez*, 748 F.2d 74 (2d Cir. 1984), and *United States v. Grady*, 544 F.2d 598 (2d Cir. 1976). The Government responds that it has not violated the Speedy Trial Act because Defendant was charged in the initial indictment with the only charge in the criminal complaint, distributing of 50 or more grams of methamphetamine, and that the charge has remained throughout both the Superseding Indictment and SSI.

In *Gonzalez*, the defendant had been indicted within the required time for allegedly defrauding one victim, but the Government had not indicted the defendant for defrauding a second victim until six months later. 748 F.2d at 79. The *Gonzalez* Court dismissed the fraud charge relating to the second victim because the defendant was not indicted until after the thirty-day period following the defendant's arrest had elapsed. *Id.* Notably, however, the *Gonzalez* Court decision rested on the fact that the defendant had not been indicted until, "more than six months after it arrested him *for such conduct*." *Id.* (emphasis added). Here, unlike in *Gonzalez*, Defendant was arrested for the conduct alleged in the criminal complaint, which has remained in the indictment since its initial inclusion within the statutorily required time.

The Third Circuit has adopted this distinction. There is no violation of the Speedy Trial Act when a superseding indictment charges conduct that was not previously charged in a complaint; the Speedy Trial Act "requires the dismissal of only those charges that were made in the original complaint that triggered the thirty-day time period." *United States v. Cox*, 553 F. App'x 123, 129 (3d Cir. 2014) (quoting *United States v. Oliver,* 238 F.3d 471, 473 (3d Cir.2001)); *see also United States v. Komolafe*, 246 F. App'x 806, 809 (3d Cir. 2007) ("[S]uperseding indictments filed longer than 30 days after an arrest which add charges to those contained in the original indictment do not violate the Speedy Trial Act.").

Defendant also cites *Grady* for the argument that the Superseding Indictment and SSI substantially broaden or amend the indictment and should therefore be dismissed for being filed outside of the Speedy Trial Act window. This Court has already rejected Defendant's reading of *Grady*. *Grady* "addressed the interplay of an indictment and the statute of limitations," and is therefore inapplicable where the statute of limitations is not implicated. *United States v. Watson*, No. CR 19-203, 2025 WL 2173346, at *3 (W.D. Pa. July 31, 2025) (citing *Grady*, 544 F.2d at 601).

Finally, Defendant also argues that the Superseding Indictment and SSI require dismissal on Fifth Amendment due process grounds and accuses the government of using pre-indictment delay to gain a tactical advantage. (ECF No. 152, at 3–4). Defendant "can make out a claim under the Due Process Clause only if he can show both (1) that the delay between the crime and the federal indictment actually prejudiced his defense; and (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him." *United States v. Beckett*, 208 F.3d 140, 150–51 (3d Cir. 2000). Defendant has not alleged how any pre-indictment delay has prejudiced his defense or any facts to indicate that the Government

deliberately delayed bringing the SSI to gain an improper advantage or to harass him. Therefore, Defendant's Due Process claim cannot succeed.

Defendant's Motion to Dismiss the Second Superseding Indictment (ECF No. 152) is therefore DENIED.

**II. Defendant's Motion For Advance Written Notice of "Other Bad Acts" Evidence (ECF No. 115), Motion For Advance Written Notice of Intent To Use Certain Impeachment Evidence (ECF No. 116), Motion For Release of Brady Materials (ECF No. 117), Motion for Discovery (ECF No. 118), Motion for Production of Jencks Material (ECF No. 119) Will Be GRANTED On the Terms Stated.**

Defendant has filed a number of Motions that relate to the presentation and admission of evidence at trial and therefore are generally resolved through a pretrial order. None of these listed Motions reveal any reason why the Court should conclusively resolve these Motions at this stage of the litigation instead of following that standard practice and addressing them in final detail closer to trial and as part of the pretrial order. And Defendant has informed the Court that one of these Motions, (ECF No. 118), has already been partially resolved. (ECF No. 166). The Court would advise the parties that such pretrial order will set final deadlines for the disclosure of any anticipated "bad acts" and impeachment evidence consistent with Federal Rules of Evidence 404 and 609, and will set a date reasonably in advance of trial for disclosure of Jencks Act material. The Court has confirmed to counsel during prior status conferences in this case that the Government's disclosure obligations under the *Brady/Giglio* doctrines exist now and are continuing according to the terms of such doctrines, and the Government has acknowledged its resulting obligations on the record and that as of the time of those acknowledgements that it had disclosed all *Brady/Giglio* material to the defense.

The Court will finally address such trial-related Motions as part and parcel of its Pretrial Order and in the usual course by the setting of disclosure timelines in the Pretrial Order. Each of the Motions at ECF Nos. 115, 116, 117, and 119 are therefore each GRANTED in substance only at

this point and subject to finalization of relevant timelines for filing and disclosures via the Court's Pretrial Order based on the circumstances then presenting. The Court REAFFIRMS that the disclosure obligations pursuant to the *Brady/Giglio* doctrines exist now and are continuing according to their terms. At to the Motion at ECF No. 118, the Motion is GRANTED only as follows and to the extent that such has yet to occur: that photographs of the currency referenced at Paragraph 7 of said Motion be made available for inspection and copying by defense counsel within 21 days of the date of this Order; that copies of the lab reports referenced in Paragraph 9 of said be Motion be made available for inspection and copying by defense counsel on the same terms; as to the request for defense counsel access to Government expert reports referenced at Paragraph 14 of said Motion, counsel shall promptly confer and submit a proposed Order as to an appropriate timeline for the disclosure of all expert reports by each party.

## III. Defendant's Motion for Discovery in Aid of Investigation into Selective Prosecution and/or Selective Enforcement (ECF No. 122).

Defendant's Motion for Discovery for Discovery in Aid of Investigation into Selective Prosecution and/or Selective Enforcement will be DENIED. Defendant has not proffered sufficient evidence to warrant the requested discovery. And the evidence Defendant alleges he would prove at an evidentiary hearing would still fail to meet this bar.

Defendant first argues he is entitled to additional discovery in aid of a selective prosecution claim. A claim of selective prosecution is "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). This claim is based on equal protection principles. *Id.* at 464–65. A decision to prosecute "deliberately based upon an unjustifiable standard" violates the Equal Protection Clause and is thereby forbidden by the Constitution. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). An unjustifiable standard includes prosecutions based on race, religion, or "the exercise of

protected statutory and constitutional rights." *Wayte v. United States*, 470 U.S. 598, 608 (1985); *see*, *e.g.*, *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1142 (D.C. Cir. 2023) (government engaged in unlawful selective prosecution for exercise of First Amendment rights when it arrested one group of protestors but not a similar group).

The standard for proving a selective prosecution claim "is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999). This "clear evidence" must demonstrate that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465. Such a demanding standard is necessary to avoid impairing the "performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465. After all, "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Wayte*, 470 U.S. at 607.

"The justifications for a rigorous standard for the elements of a selective-prosecution claim [] require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. This is because responding to a selective prosecution discovery request distracts the Government from its prosecutorial functions and forces it to divert resources which otherwise may be used to support the prosecution. *See id.* Notably, these are the same issues caused by responding to the merits of a selective prosecution claim itself, albeit to a lesser degree. Because the same issues are implicated by selective prosecution discovery requests, the same standard applies. Thus, discovery requests for selective prosecution claims "require *some evidence* tending to show the existence of the essential elements" of discriminatory effect and discriminatory intent.

*Id.* (emphasis added).

Demonstrating "some evidence" that a prosecution had a discriminatory effect requires "a credible showing of different treatment of similarly situated persons." *Id.* at 470. For example, in *United States v. Jones,* the Sixth Circuit Court of Appeals reversed a lower court order denying selective prosecution discovery. 159 F.3d 969 (6th Cir. 1998). *Jones* involved a selective prosecution claim accusing Tennessee's Murfreesboro Police Department of prosecuting the Defendant, Climmie Jones Jr., based on his race. Jones was an African American man arrested on cocaine distribution charges. *Id.* at 973. After Jones was arrested, his case was referred for federal prosecution. *Id.* at 975. Jones claimed this referral was racially motivated. As evidence of this, Jones pointed out that the Murfreesboro Police had arrested eight white defendants for cocaine distribution, but had only referred Jones and his co-defendant for federal prosecution. *Id.* at 976. The Sixth Circuit found that this disparate approach was "some evidence" of a discriminatory effect, permitting discovery on such matters. *Id.* at 978.

Showing "some evidence" of discriminatory intent is difficult. This is because it requires a demonstration that it was likely the prosecutor "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (quoting *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)). This kind of direct evidence is hard to come by prior to commencing discovery, and indeed "neither the Supreme Court nor [the Third Circuit] has ever found sufficient evidence to permit discovery of a prosecutor's decision-making policies and practices." *United States v. Washington*, 869 F.3d 193, 215 (3d Cir. 2017).[1]

---

[1] The Sixth Circuit in *Jones* did find there was evidence of discriminatory intent, based on some fairly outrageous facts. The Murfreesboro Police Officers who arrested Jones and his co-defendant made t-shirts celebrating that arrest. 159 F.3d at 975. Notably the t-shirts the officers made featured Jones and his wife, who is also African American but not a party to the case, but omitted Jones's co-defendant, who was equally accused of wrongdoing but who was white.

In this case, Defendant has not demonstrated "some evidence" of discriminatory effect or of discriminatory intent. Defendant has not alleged there is any party who is sufficiently similarly situated to himself who was treated differently for legally impermissible reasons, let alone provided "some evidence" of it. This is insufficient to show a discriminatory effect. And Defendant has no evidence other than the speculation contained in his Motion that his prosecution was done "because of" his prior invocations of his constitutional right. Defendant does seek to introduce additional evidence through a requested evidentiary hearing that he alleges would establish discriminatory intent by proving a pattern of police harassment. But the problem with that evidence is that even if it proved what the Defendant alleges it will, the Defendant's numerous prior run-ins with the law provide a "legitimate reason" for the prosecution focusing on the Defendant. *United States v. Rundo*, 108 F.4th 792, 807–08 (9th Cir. 2024). And where such a legitimate reason exists, the evidence would need to demonstrate that harassment was the purpose of the Defendant's prosecution, not just a byproduct of otherwise legitimate practices. *See id.* The Defendant has not crossed over that threshold here.

Defendant argues in the alternative for additional discovery in support of a selective enforcement claim.[2] After *Armstrong* cemented the requirements for selected prosecution

---

*Id.* at 977. If that was not enough, one of the officers mailed Jones a post card while the officer was on vacation, one featuring an African American woman with bananas on her head. *Id.* When asked about that card on the stand, the officer testified the postcard meant "[n-word], you're a monkey with bananas." *Id.* Suffice it to say that the record here includes nothing along those lines, nor any suggestion that such exists or would likely be discerned with authorized discovery.

[2] After the SSI was filed, the Defendant confirmed that the new allegations made little difference to the Court's consideration of his then pending Motions and reasserted them in full. (ECF No. 154). The only difference in the SSI the Defendant did highlight was the possibility of an enhanced sentence due to the new allegations. Defendant went on to argue that his Motion for Selective Enforcement could also be seen as Motion to Dismiss for Vindictive Prosecution in light of these new allegations, arguing that the inclusion of possible sentence-enhancing allegations after Defendant has made selective prosecution/enforcement arguments grounded in the Equal Protection Clause are "facts sufficient to give rise to a presumption of vindictiveness." *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993). But cases involving sentence-enhancing allegations made subsequent to the assertion of a Constitutional right generally also require additional "suspect conditions that lead us to independently question whether the charging decision was made in good faith." *United States v. Korey*, 614 F. Supp. 2d 573, 584 (W.D. Pa. 2009). None are

discovery, several courts began to question if its high bar should also apply to claims for selective enforcement. The Third Circuit joined these courts in *United States v. Washington*. There the Court considered if the "demanding gatekeeper" introduced in *Armstrong* should also apply to claims of selective enforcement. 869 F.3d at 215. The Court, relying heavily on the Seventh Circuit's opinion in *United States v. Davis*, decided the same policy concerns that justified creating a rigorous standard in selective prosecution cases did not apply to selective enforcement cases. *Id.* at 218.

It is first necessary to distinguish between selective prosecution and selective enforcement cases. The former refers to allegedly unconstitutional actions taken by the United States Attorney in bringing or amplifying charges against a criminal defendant. *See United States v. Davis*, 793 F.3d 712, 718 (7th Cir. 2015) (en banc). The latter involves allegedly unconstitutional actions taken by law enforcement officers during investigations and arrests. *See United States v. Sellers*, 906 F.3d 848, 852–53 (9th Cir. 2018). There is a crucial difference in the identity of the allegedly unconstitutional actor: prosecutor vs. officer.

That difference stems from the solicitude given to prosecutorial decision making. Federal prosecutors are presumed to exhibit "honest and constitutional behavior," and the Judicial Branch is not properly equipped to second guess "the Executive branch's deliberative processes, which are covered by strong privileges." *Davis*, 793 F.3d at 720. This is why prosecutors "are ordinarily shielded by absolute immunity for their prosecutorial acts." *Washington*, 869 F.3d at 219. The strong layers of protection for prosecutorial decision making are why seeking information through selective prosecution discovery must first meet a high bar.

---

advanced to exist here, and the Supreme Court has held that the Government may amplify charges during the course of a prosecution, even after a defendant expresses a desire to proceed to trial or asserts one or more substantive or procedural defenses to the charges. *See Bordenkircher*, 434 U.S. at 364

The same cannot be said for other law enforcement officers. These officers "are not protected by a powerful privilege or covered by a presumption of constitutional behavior." *Davis*, 793 F.3d at 720. In an ordinary criminal case, criminal defendants "are allowed discovery for various aspects of law enforcement operations." *Sellers*, 906 F.3d at 853. Absent the special considerations unique to the prosecutor position, there is no need to make gaining access to such discovery especially onerous.

However, "motions for discovery on selective enforcement claims must still be guided by the spirit of *Armstrong*." *Washington*, 869 F.3d at 220. Thus, the general framework still applies, just with some tweaks. The biggest tweak is that reaching selective enforcement discovery no longer requires some evidence of discriminatory intent. Instead, selective enforcement discovery can commence upon a proffer that shows some evidence of discriminatory effect alone. This proffer must "contain reliable statistical evidence or its equivalent . . . . [And] be strong enough to support a reasonable inference of discriminatory intent and non-enforcement." *Id.* at 221.

The Government points out that Defendant has not proffered *any* statistical evidence to trigger such discovery, and the Defendant responds that statistical evidence is not necessary so long as he can provide its persuasive equivalent. Defendant is correct, but his proffered evidence falls well short of the necessary equivalency. That is because he has not identified any similarly situated person who was not subject to the law enforcement actions Defendant complains about here. And the evidence Defendant claims he would prove at his requested evidentiary hearing would only focus on himself and his family, not any persons who are similarly situated who could have been targeted by law enforcement but were not. *Cf. Armstrong*, 517 U.S. at 470 (concluding that evidence submitted must show that individuals exist who "could have been prosecuted for the offenses for which [Defendants] were charged, but were not" to permit discovery on a selective

prosecution claim). Defendant is not entitled to discovery without making a showing that there would be evidence that law enforcement unlawfully and selectively "acted upon, or did not act upon, persons similarly situated to the defendant." *Washington*, 869 F.3d at 221 n.124.

Defendant's Motion for Discovery for Discovery in Aid of Investigation into Selective Prosecution and/or Selective Enforcement (ECF No. 122) is DENIED. Defendant has not proffered evidence of discriminatory effect or discriminator intent sufficient to justify discovery in aid of a selective prosecution claim. Nor has he identified any similarly situated person who was not subject to the same law enforcement actions as the Defendant so as to justify discovery in aid of a selective enforcement claim.

**IV. Defendant's Motion to Suppress Firearm Evidence (ECF No. 123).**

Count 4 of both the Superseding Indictment and the SSI charges Defendant with unlawfully possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). The firearm in question was a Smith & Wesson pistol found in Defendant's satchel the day he was arrested. The Defendant argues the search of this satchel was unconstitutional and thus evidence of the pistol must be suppressed. The Government disagrees. The Court will order an evidentiary hearing be held on this Motion. Here's why.

The First Warrant that accompanied Defendant's arrest did not specifically authorize a search of his satchel for a firearm. It authorized a search of Defendant's "person" that included any "electronics in his immediate control." (ECF No. 125-2 at 3). The items to be seized pursuant to this search did include any "evidence, fruits, or instrumentalities of" crime, but was more specifically focused on cell phones and other digital devices. (ECF No. 125-2 at 4). The warrant did not make any mention of any satchel, bag, or luggage.

When constructing the Fourth Amendment, the Framers specifically prohibited the use of general warrants that allowed "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). To that end, search warrants must be sufficiently particularized to be "as limited as possible" in their resulting search. *Id.* Sufficient particularization includes a written description of the areas to be searched and the kind of items to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (quoting U.S. Const. amend. IV). Searches and seizures conducted outside of the written description contained in a warrant must be justified by something other than that warrant. Because neither search warrant here identified Defendant's satchel as a place to be searched, the Government must provide a more specific justification for that search.

The Government claims it has one: law enforcement can constitutionally search an individual incident to a lawful arrest in order to secure weapons and prevent the concealment or destruction of evidence. *United States v. Robinson*, 414 U.S. 218, 234–35 (1973). This type of search is permissible "to accommodate the eminently important goal of ensuring police officer safety." *United States v. Matthews*, 532 F. App'x 211, 224 (3d Cir. 2013). Officer safety being the primary concern, the limits of such a search can only extend so far as necessary to ensure that safety. *See Chimel v. California*, 395 U.S. 752, 762 (1969).

This is where the factual dispute between the parties comes in. Defendant argues that ensuring officer safety cannot be used as a justification to search his satchel, because it was already away from his person and thus posed no threat. The Government has a different account. According to its briefing, the satchel was still on the Defendant's body and he could have accessed its contents, placing officers at risk had they not secured the pistol within. Because the justification of the search of the satchel and subsequent seizure of the firearm heavily depends on the facts

surrounding Defendant's proximity to the searched satchel and well may implicate a permissible basis for the search outside of a warrant, the Court ORDERS that an evidentiary hearing on this matter be held. The final disposition of this Motion will be held in ABEYANCE pending the conduct of that hearing and the completion of the record in regard to this Motion.

## V. Defendant's Motion to Suppress FaceTime Recordings, Text Messages, and Evidence of Cellular Telephone Calls (ECF No. 124).

When Defendant communicated with the UO, he did so via text messages, phone calls, and FaceTime video calls apparently by using an Apple iPhone. The Government has records of all these communications across all three media. The UO took visual screenshots of the text messages Defendant sent to him, and also took a visual screenshot of the call log that lists the details (but not the substance of any conversation) of the nine phone calls which occurred between UO and the Defendant. Finally, the Government also has video/audio recordings of the video calls. These recordings were taken by another law enforcement officer who was in the room with the UO unbeknownst to the Defendant and who used a separate device to "film" the video calls, by the second officer using the camera function on his cellphone to make a video/audio recording of what was appearing contemporaneously on the UO's cellphone Defendant argues that all of these electronic records should be suppressed.

Defendant's argument for suppression is based on his having a reasonable expectation of privacy in these communications. Fourth Amendment protections come in several flavors. The first follows traditional notions of trespass law and is triggered whenever the Government "obtains information by physically intruding on a constitutionally protected area." *United States v. Jones*, 565 U.S. 400, 405 (2012). But the second is broader, protecting against Government intrusion in any area where the defendant had "a legitimate expectation of privacy in the invaded place." *United States v. Montalvo-Flores*, 81 F.4th 339, 342 (3d Cir. 2023). If such an expectation of privacy

exists, then Government intrusion must be justified by the existence of a valid warrant, or some other lawful exception to the warrant requirement.

Defendant argues he has a legitimate expectation of privacy in the content of his involved digital communications such that the recording of them by their recipient, when said recipient is a law enforcement officer, required a search warrant and, no such warrant existing, they must be suppressed. Defendant's alleged expectation of privacy comes from the type of phone he used: an Apple iPhone. Defendant proffers the Apple company's privacy policy which states that communications made via text messages and FaceTime video calls between iPhones are encrypted in such a way that ensures the confidentiality of these messages from interception. Defendant argues it is that encryption technology which gave him an expectation of privacy in his digital communications made with an iPhone, and that to "invade" this privacy by a receiving police officer recording the visual/audio content showing upon his cellphone, the Government would need a valid search warrant.

In *United States v. White*, the Supreme Court considered a similar situation. 401 U.S. 745 (1971). There, a government informant conversed with the defendant at his home on four separate occasions while wearing a wire *Id.* at 746–47. The defendant's statements in these conservations were electronically conveyed to an agent outside the home using the wire. *Id.* at 747. A fractured Supreme Court held that this did not violate the Fourth Amendment. The plurality based its conclusion on an understanding that there was no legitimate expectation of privacy in the words of the defendant as spoken to another. *Id.* at 751. The reasoning was: a person is not justified in expecting a conversational partner not to communicate the contents of a conversation to a third party or otherwise record what was said to them. *Id.* If a person is not justified in having that expectation of privacy, such an expectation cannot exist when an electronic means serves to

expedite the same process that would have occurred had the informant immediately contacted the outside agent after the conversations or had immediately written them down. *Id.* at 751–52.[3]

For Defendant to succeed he must prove that *his* expectation of privacy in the encryption technology of Apple phones was so strong that it extended even further than the expectation of privacy one has in a conversation conducted through any other medium as articulated by the *White* plurality. Defendant claims he has an expert witness who can do just that.

The Court has its doubts given the rather common-sense principles applied by the *White* plurality, and the realities of everyday life that something said to another ceases to be a secret,[4] at least when there is no use of technology to intrude into the communications device(s) to actually intercept content and which would be subject to federal or state wiretap laws. But nonetheless, the issue is significant enough that the Court will give the Defendant the opportunity to make and support his arguments in such regards, and ORDERS than an evidentiary hearing will be held on the Defendant's motion that the Defendant had a reasonable expectation of privacy in the text messages, phone calls, and video FaceTime calls involved in this case, and that even the receipt and recording of the content at issue here unconstitutionally violated his Fourth Amendment rights in such regards. The Court anticipates that such hearing will be held conterminous with the other hearings directed by this Order. The Court will therefore resolve this Motion only after the conduct of such hearing and completion of the record in such regards. Therefore, the disposition of the Motion at ECF No. 124 is held in ABEYANCE pending further proceedings.

---

[3] Justice Black provided the decisive vote for the judgment in that case, although he only concurred in the judgment. Justice Black based his conclusion on his belief that Fourth Amendment jurisprudence had erred when it moved away from common-law trespass, and thus electronic recordings by the Government could never implicate the Fourth Amendment, reasonable expectation of privacy or not. *White*, 401 U.S. at 754.

[4] As Benjamin Franklin once wrote, "[t]hree may keep a secret, if two of them are dead." Benjamin Franklin, Poor Richard's Almanack 8 (Dean Walley ed., Hallmark 1967) (1732).

## VI. Motion to Suppress Evidence of Phones Associated with (412) 545-4031 and (412) 636-7017, the Fruits of the Search of Said Phones, and for a *Franks* Hearing (ECF No. 125).

Two cell phones used by Defendant were seized and then searched. The first was associated with the phone number (412) 545-4031 ("4031 phone") and was seized from Defendant when he was arrested. The First Warrant issued in this case authorized a search for "[a]ny mobile cellular phones found the person of" Defendant. (ECF No. 125-2 at 4). The second cell phone was associated with the phone number (412) 636-7017 ("7017" phone) and was seized from the car Defendant drove to meet with the UO the day he was arrested. That phone was seized pursuant to the Second Warrant, which authorized a search for "[c]ellular telephones" within the vehicle. (ECF No. 125-4 at 12). Defendant argues both warrants used to seize these phones are invalid, and thus evidence of the phones and of any information contained inside of them should be suppressed.

Beginning with the First Warrant, which was used to seize the 4031 phone, Defendant makes three arguments in support of suppression. First, Defendant argues that the warrant was invalid because it was a "general warrant" which lacked particularity because it authorized a search of the entire phone's contents. Second, Defendant continues, there was not even probable cause to search any of the phone's contents in the first place, because the statements in the underlying affidavit were conclusory and without any factual support. Finally, Defendant argues that to the extent there was probable cause to search the 4031 phone, the investigators who searched it went beyond the scope of the warrant.

The Fourth Amendment abhors a general warrant, and a general warrant is one that "vests the 'executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence.'" *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d Cir. 2006) (quoting *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002)). Avoiding such vesting

requires particularization, specifically the warrant must include a written description of the areas to be searched and the kind of items to be seized. *Groh*, 540 U.S. at 557. The particularity requirement also applies to digital devices, and a warrant cannot "grant[] the Government access to, *inter alia*, *every* email, *every* text message, *every* digital file, *all* call logs, *all* location data, and *all* internet browsing history." *United States v. Williams*¸ 813 F. Supp. 3d 503, 526 (E.D. Pa. 2025).

But the First Warrant in this case was sufficiently particularized. It included a discrete list of 23 different categories of information that could be seized from the contents of Defendant's phone. (ECF No. 125-2 at 4–5). And the warrant is clear that the only pieces of information that fit within these categories which could be seized were those that related to the crimes Defendant was accused of at that time. (ECF No. 125-2 at 4). This is far from an unparticularized general warrant that "includes no limiting principle." *Williams*, 813 F. Supp. 3d at 526.

Particularization is irrelevant if the warrant is not supported by a finding of probable cause. The Fourth Amendment ensures "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The probable cause requirement exists "to affirm and preserve a cherished rule of the common law, designed to prevent the issue of groundless warrants." *McGrain v. Daugherty*, 273 U.S. 135, 156 (1927). Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotations and citations omitted).

The search and seizure of the 4301 phone is supported by probable cause. The search and seizure was based on a very compelling set of alleged facts stated in support of the issuance of the warrant: the Defendant had used that phone to sell narcotics to the UO on multiple prior occasions.

The Defendant seems to argue there is an insufficient connection between these facts and a search of the 4301 phone outside of Agent Erevia's alleged training and experience. While it is true that "when it comes to establishing probable cause to sort through another's privacy, something more in the way of case-specific evidence must nudge training and experience across the finish line," such evidence exits here. *See United States v. LaCosta-Franco*, 828 F. Supp. 3d 543, 557–58 (E.D. Pa. 2026). That evidence is: the use of a cellular phone to schedule and execute multiple sales of narcotics, these sales involving an amount of narcotics sufficient to suggest a larger enterprise that goes beyond what was already known by the UO, and the use of multiple cell phone numbers to communicate with the UO that suggests Defendant used cellular devices with enough frequency to develop a strategy to avoid detection.

Defendant's final argument regarding the suppression of the fruits of the First Warrant goes to its execution. Defendant argues the investigators that searched the phone "exceeded the authority of the warrant by retrieving from the telephone information and data that did not constitute evidence of the offense(s) being investigated." (ECF No. 125 at 11). The Defendant does not identify which pieces of evidence he believes exceeded the warrant's scope. In its responsive briefing, the Government has provided an extraction report listing all of the information taken from the 4031 phone. (ECF No. 131-3).

"If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). Because a particularized warrant is not required to list every minute location where an item to be seized could be found within an area to be searched, a search does not exceed the scope of a warrant so long as "it is reasonable to believe that the container [searched] could conceal items of the kind portrayed in the warrant." *United States v. Dyer*, 54 F.4th 155, 159 (3d Cir. 2022)

(quoting *United States v. Crooker*, 688 F.3d 1, 8 (1st Cir. 2012)). This is an objective inquiry. *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987). In the context of digital devices, "because criminals can easily alter file names and file extensions to conceal contraband," a "cursory review of each file" on a device does not exceed the scope of a warrant, so long as the search does not continue once it is objectively clear the file does not contain the type of information specified in the warrant. *See United States v. Stabile*, 633 F.3d 219, 239 (3d Cir. 2011) (quoting *United States v. Williams*, 592 F.3d 511, 522 (4th Cir. 2010)).

The extraction report from the 4301 phone demonstrates that the matters searched for fell within the 23 categories listed on the First Warrant. To the extent that the Defendant challenges the digital extraction that led to the seizure of this evidence as going beyond the scope of the warrant, there is no allegation of evidence that the extraction went beyond a "cursory review" or otherwise continued in files where it was objectively clear the information specified in the warrant could not be found.

Defendant offers three arguments in favor of suppression relative to the search and seizure of the 4301 phone, but none cut the mustard. The First Warrant was particularized, was supported by probable cause, and was executed within its scope. And even if the above were not true, suppression would not be justified due to the executing officer's reliance on a warrant validly issued by a United States Magistrate Judge in good faith. *See United States v. Goldstein*, 914 F.3d 200, 203–04 (3d Cir. 2019). Thus, the Court declines to suppress the evidence obtained via the First Warrant and the search and seizure of the cell phone associated with the phone number (412) 545-4031.

The back half of Defendant's Motion alleges that the affidavit sworn out by Special Agent Erevia that was used to support the Second Warrant contains false statements and material

omissions of fact, and he therefore seeks an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Second Warrant authorized a search inside the car Defendant drove to the meeting with the UO that led to his arrest. The search that was conducted in executing this warrant resulted in the finding of a cellular phone associated with the number (412) 636-7017. Defendant seeks the suppression of this phone and any of the digital matter contained within it and which have been extracted.

The Fourth Amendment guarantees criminal defendants the right to "challenge the veracity of statements made in an affidavit of probable cause that supported the issuance of a warrant." *United States v. Aviles*, 938 F.3d 503, 508 (3d Cir. 2019). A defendant is entitled to an evidentiary hearing on their challenge if they can make "a substantial preliminary showing" that the affidavit contained a false statement or omission that (1) was made knowingly and intentionally, or with reckless disregard for the truth; and (2) was material to the finding of probable cause. *Franks*, 438 U.S. at 155–56. Crucially, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171.

Because "a substantial preliminary showing," is a lower evidentiary burden than "a preponderance of the evidence," proof of knowledge and intentionality, or of reckless disregard need not be exacting, but as noted must be substantial. *See id.* at 155–56. For example, in *United States v. Heilman*, a memorandum of a pre-affidavit interview that demonstrated an affiant knew of an omitted fact was a sufficient showing that the affiant knowingly and intentionally omitted it. 377 F. App'x 157, 179–80 (3d Cir. 2010). And for false statements or omissions to be made with reckless disregard for the truth, the Third Circuit has held such a showing can be made without extrinsic evidence, so long as there are "obvious reasons to doubt the truth of what [the affiant] is

asserting" or the omitted facts are those "that any reasonable person would want to know." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)).

To decide if false statements or omitted facts undermine a previous finding of probable cause such that a *Franks* hearing is required, the fact must also be "material," and a reviewing court need only edit the underlying affidavit to correct the statements or include the omitted facts and look to see if probable cause still exists. In Defendant's case, he is challenging the existence of probable cause to search his car. Probable cause to search a defendant's car after his arrest exists when there is a "fair probability that contraband or evidence of a crime" will be found there. *United States v. Donahue*, 764 F.3d 293, 301 (3d Cir. 2014). When a defendant is the target of a sting operation and is arrested upon arriving by car at a specific time and location pursuant to that sting operation, there generally is a fair probability contraband or evidence of a crime is inside their mode of transportation absent evidence to the contrary. *See United States v. Dennis*, 527 F. App'x 221, 223–224 (3d Cir. 2013).

Defendant asserts Agent Erevia made one false statement and omitted three material facts in his affidavit. First, Defendant highlights the statement: "One other person, a black, female was also in the [Defendant's] vehicle and taken into custody." (ECF No. 125-4 ¶ 19). Defendant claims this is a false statement because allegedly Agent Erevia knew this woman was the Defendant's wife and that she had been released from the arrest scene and not taken into custody. The Defendant also proffers the following three omitted facts:

- Agents in the undercover operation had no factual basis to believe any of Defendant's associates had participated in any alleged drug deliveries
- Agents in the undercover operation knew in advance that the Defendant was intending to

deliver fentanyl and not methamphetamine, when he arrived the day he was arrested and thus the agents also knew the Defendant did not possess methamphetamine that day

- Agents in the undercover operation knew that a protective sweep had already been performed in the interior of the car and no evidence had been in plain view when that sweep was performed

(ECF No. 125 ¶ 32). Defendant argues that the allegedly false statement regarding his wife, combined with these three omitted facts, undermines any probable cause to search his car.

Defendant is owed a *Franks* hearing if he can make a substantial preliminary showing on two fronts. The first front is to show the deficiencies in the underlying affidavit were made either knowingly and intentionally, or with reckless disregard for the truth. The second front is to show that the correction of false statements and inclusion of omitted facts undermines any finding of probable cause because the referenced statements were material. For the following reasons, Defendant cannot make a substantial preliminary showing on either front, and thus is not entitled to an evidentiary hearing under *Franks*.

First, Defendant cannot make a substantial preliminary showing that the deficiencies in the underlying affidavit were made either knowingly and intentionally, or with reckless disregard for the truth. Defendant does not make a showing that the deficiencies were made knowingly and intentionally because, while he does claim that Agent Erevia had knowledge both of the three omitted facts Defendant submits and that the woman in Defendant's car was his wife, Defendant fails to provide any proof outside of his conclusory assertions to support this. *See Yusuf*, 461 F.3d at 383 n.8. Nor can he show that the allegedly false statement was made with reckless disregard for the truth, because there is no obvious reason to doubt the truth of the statement regarding the identity of the woman in Defendant's car made by a law enforcement agent. *See id.* at 385 (holding

that absent an apparent contradiction a law enforcement agent's affidavit is "generally presumed to be reliable").

And finally, he cannot show that the three proffered facts were recklessly omitted, because no reasonable person would want to know them when considering if probable cause existed. As to the first fact, any assurance of the involvement of Defendant's associates in his illegal activity barely relates (if at all) to the Defendant keeping additional evidence in his car. And the second fact is not even an omitted fact, as the affidavit is clear that Defendant was only contacted to sell fentanyl — not methamphetamine — to the UO the day he was arrested. Finally, the third fact is of little consequence being that a protective sweep is by definition "a quick and limited search," and a reasonable person would not find the existence of a quick and limited search already occurring necessary to making a probable cause determination in this case. *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

But even if Defendant could make the requisite showing on the first front, he could not make the necessary showing on the second. The Defendant arrived at the location where he had arranged to sell illegal narcotics to an UO for the fourth time in his car, after communicating with the UO using two different phone numbers, only one of which was associated with the phone the agents who arrested the Defendant seized from his person. These facts alone make it a "fair probability" that additional evidence of the alleged crimes, and particularly evidence of a second cell phone, would be found in his car. *See Donahue*, 764 F.3d at 301. Correcting the allegedly false statement about the Defendant's wife and inserting each of the referenced omissions do not change or undermine the existence of probable cause for the search or the issuance of the Second Warrant. Thus, Defendant cannot make a substantial preliminary showing on either of the *Franks* requirements, and thus is not entitled to an evidentiary hearing.

Defendant's Motion at ECF No. 125 arguing both that the First Warrant is invalid and seeking a *Franks* hearing to challenge the Second Warrant is DENIED. The First Warrant was valid, executed properly, and in any event would not result in suppression due to the good faith exception. The Second Warrant was based on an affidavit with probable cause even when considering its alleged deficiencies, and there is no evidence those alleged deficiencies were made knowingly and intentionally or with reckless disregard for the truth.

**VII. Supplemental Motion for Discovery (ECF No. 133).**

Defendant has filed a Motion seeking the independent chemical weighing and testing of methamphetamine samples in the Government's possession pursuant to Federal Rule of Criminal Procedure 16. These samples came from Defendant's alleged sale of methamphetamine to the UO. Defendant argues that the weight and composition of these samples will have an impact on the potential sentence Defendant could receive under the United States Sentencing Guidelines if he is eventually convicted. The Government opposes the Motion. (ECF No. 136). It argues such a test is not within the scope of Rule 16, and in any event, allowing such testing would undermine the ongoing integrity and accuracy of evidence tracking and thereby frustrate its ability to prosecute its case. The parties filed a negotiated protective order to ensure that the integrity and accuracy of evidence tracking remains intact if Defendant's Motion should be granted and such testing were to occur. (ECF No. 168). The Government was clear that notwithstanding its agreement to the terms or entry of the protective order, it still believes such testing is not required in this case and the Court should deny the Motion. (ECF No. 169).

Under Federal Rule of Criminal Procedure 16(a)(1)(E), a criminal defendant is entitled to "inspect" any item within the government's possession if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was

obtained from or belongs to the defendant." The "clear reading of the rule demonstrates that a defendant's request for inspection must be permitted if any of the three circumstances exist, and it is not necessary to establish all three or even two of the three." *United States v. Giardina*, No. CRIM. 04-29J, 2005 WL 3088441, at *7 (W.D. Pa. Nov. 17, 2005). In a case such as this one where the Defendant is charged with drug trafficking, it is "most likely that both the actual [narcotics] and the crime lab report will be introduced as evidence" at trial. *Id.* at 8.

The Government argues that even if this is true (and it does not dispute its veracity) ordering such testing goes beyond the plain meaning of Rule 16. According to the Government, the word "inspect" only allows the Defendant, either personally or through counsel, to look at the samples and does not give him a right to ship it off to have a third party conduct the testing as requested here. The Government argues that there is no case binding on this Court which reads the word "inspect" in Rule 16 so broadly.

But while the Government is correct that there is no binding authority supporting Defendant's position on this point, there also is not persuasive authority supporting the Government's position. Indeed, the Government's responsive briefing is devoid of any cite to a case holding that the word "inspect" in Rule 16 is as limited as the Government suggests. The single case it does cite in its favor denied a requested inspection because the defendant had not made an adequate showing that the Government's testing was inadequate. *See United States v. Turks*, No. 3:17-CR-444, 2019 WL 3387770, at *2 (N.D. Ohio July 26, 2019). But notably, the discovery request in that case was not based on Rule 16, and there is no requirement that inspection directed pursuant to that Rule is only required upon a showing the Government had not adequately inspected the evidence. *See* Fed. R. Crim. P. 16(a).

Meanwhile, the cases interpreting Rule 16 to entitle criminal defendants to independent

testing of essential criminal evidence are legion. *See United States v. Butler*, 988 F.2d 537, 543 (5th Cir. 1993) ("Because the substance alleged to be cocaine base was obtained from [the defendant] and because the government intended to use the substance as evidence at trial, we agree that the court erred in refusing to grant appellant's motion to test a sample of the substance."); *United States v. Dog Taking Gun*, 7 F. Supp. 2d 1118, 1121 (D. Mont. 1998) (holding Rule 16(a)(1)(E) entitles defendant to independent testing of DNA evidence); *United States v. Noel*, 708 F. Supp. 177, 177 (W.D. Tenn. 1989) (holding Rule 16(a)(1)(E) entitles defendant to independent testing of heroin evidence); *United States v. Bowers*, No. 18-292, 2022 WL 7602419, at *2 (W.D. Pa. Oct. 12, 2022) (holding Rule 16(a)(1)(E) entitles defendant to independent testing of crack-cocaine evidence); *United States v. Carrell*, No. 05-1484, 2006 WL 8427721, at *1 (D.N.M. Aug. 2, 2006) (same).

This Court joins numerous others in holding that to "inspect" an item in the government's possession under Rule 16(a)(1)(E) entitles a criminal defendant to independent testing and examination under protocols that will not compromise the evidentiary value of the evidence to be inspected. Thus, Defendant's Motion is GRANTED to the extent set out in this Order. However, to ensure the independent testing will not hamper or frustrate the ability of the Government to fully and fairly prosecute its case, the testing will occur in compliance with the protective order consented to by both parties and filed on this Court's docket at (ECF No. 168). Counsel for Defendant shall supply the Court with a "clean" copy of the proposed Order for Court action.

## VIII. Defendant's Motion to Sever Counts (ECF No. 121), Motion to Strike Information to Establish Prior Conviction (ECF No. 153).

Defendant's Motion to Sever Counts (ECF No. 121) and Motion to Strike Information to Establish Prior Conviction (ECF No. 153), will be HELD IN ABEYANCE pending the resolution

of the evidentiary hearings ordered above, as suggested by defense counsel during the most recent conference with the Court.

## CONCLUSION

The following Motions are GRANTED on the specific terms stated above and subject to further formalization of timelines in the pretrial Order of this Court:

- Motion For Advance Written Notice of "Other Bad Acts" Evidence (ECF No. 115)
- Motion For Advance Written Notice of Intent to Use Certain Impeachment Evidence (ECF No. 116)
- Motion for Release of Brady Materials (ECF No. 117)
- Motion for Discovery (ECF No. 118)
- Motion for Production of Jencks Material (ECF No. 119)

An evidentiary hearing will be scheduled to address the issues raised in the following Motions and their final disposition is HELD IN ABEYANCE pending the further development of the record as noted above:

- Motion to Suppress Firearm Evidence (ECF No. 123)
- Motion to Suppress FaceTime Recordings, Text Messages, and Evidence of Cellular Telephone Calls (ECF No. 124)

The following Motions are HELD IN ABEYANCE pending the resolution of the Motions that are the subject of said evidentiary hearing:

- Motion to Sever Counts (ECF No. 121)
- Motion to Strike Information to Establish Prior Conviction (ECF No. 153)

The following Motions are DENIED:

- Motion for Discovery in Aid of Investigation into Selective Prosecution and/or Selective Enforcement (ECF No. 122)
- Motion to Suppress Evidence of Phones Associated with (412) 545-4031 and (412) 636-7017, the Fruits of the Search of Said Phones, and for *Franks* Hearing (ECF No. 125)
- Motion to Dismiss on Speedy Trial the Second Superseding Indictment (ECF No. 152)

The following Motion is GRANTED as set out above, and as impacted by the entry of a protective order as filed at (ECF No. 168) and which the Court will enter separately.

- Supplemental Motion for Discovery (ECF No. 133)

Counsel shall confer and advise the Court of the time frame they suggest for the conduct of the evidentiary hearing referenced in this Order (in light of the arrangements necessary for witness testimony), and the anticipated duration of such hearing. They shall also propose to the Court a schedule for all expert disclosures, which may be staggered as between experts related to such evidentiary hearing and trial. Counsel shall file a Joint Status Report as to all such matters within 21 days of the date of this Order. The terms of the Court's Order at (ECF No. 130) excluding time to allow for the litigation and disposition of pretrial motions remain in full force and effect

**SO ORDERED** this 14th day of October 2026.

/s/ Mark R. Hornak
Mark R. Hornak
United States District Judge